IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA,
CLARKSBURG DIVISION

ELECTRONICALLY FILED
June 15, 2018
U.S. DISTRICT COURT
Northern District of WV

WESTRIDGE ESTATE, LLC,

    Plaintiff,

v.

PRESTON FUNERAL ENTERPRISES, LLC,

    Defendant and Cross-Claim Plaintiff,

and

HARTFORD CASUALTY INSURANCE COMPANY,

    Defendant and Cross-Claim Defendant.

CASE NO. 1:18-CV-135

JUDGE Keeley

(Removed from the Circuit Court of Preston County, West Virginia, Civil Action No. 16-C-69)

**DEFENDANT AND CROSS-CLAIM DEFENDANT HARTFORD CASUALTY INSURANCE COMPANY'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, defendant Hartford Casualty Insurance Company ("Hartford"), by and through the undersigned counsel, respectfully gives notice of the removal of the above-captioned case from the Circuit Court of Preston County, West Virginia, Civil Action No. 16-C-69, to the United States District Court for the Northern District of West Virginia, Clarksburg Division, on the following grounds:

    1.    On or about March 30, 2016, plaintiff Westridge Estate, LLC ("Westridge") filed a civil action in the Circuit Court of Preston County, West Virginia, naming as defendants Preston Funeral Enterprises, LLC ("Preston") and Hartford.

2. According to Westridge's complaint allegations, both Westridge and Preston were West Virginia limited liability companies with principal places of business in West Virginia.

3. In the complaint, Hartford was alleged to be, and is, an Indiana corporation. Hartford's principal place of business is Hartford, Connecticut.

4. On the face of the complaint, the requirements for diversity jurisdiction were not met because the presence of Westridge, as plaintiff, and Preston, as co-defendant, meant that complete diversity did not exist, insofar as both companies are West Virginia companies with principal places of business in West Virginia. See 28 U.S.C. § 1332(a) (requiring "citizens of different states"). The removal and diversity jurisdiction statutes "have consistently been held to require complete diversity of citizenship. That is, diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) (quoted in Shorraw v. Bell, Civil Action No. 4:15-cv-03998-JMC, 2016 WL 3586675, * 3 (D.S.C. July 5, 2016)).

5. Since that time, however, Hartford has learned facts suggesting that the presence of Westridge and Preston as purportedly adverse parties to one another was alleged and asserted in bad faith, first in Westridge's complaint filing, and then in subsequent filings by both Westridge and Preston in the course of the litigation.

6. Historically, prior to recent statutory amendments, a defendant like Hartford had a one-year outer limit in which to remove a case from state court to federal court after receipt of a pleading or other paper demonstrating that the case was removable. See generally 28 U.S.C. § 1446(b)(3) (defendant has 30 days to remove after receipt of an "amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable") and 28 U.S.C. § 1446(c)(1) (creating a baseline limit of one year for such removal).

2

More recently, however, under statutory amendments contained in 28 U.S.C. § 1446(c)(1), that one-year outer limit is eliminated under a "bad faith" exception.

7. Specifically, under 28 U.S.C. § 1446(c)(1), the one-year limit does not apply where "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

8. "The contours of the bad faith exception are murky in the Fourth Circuit." Johnson v. HCR Manorcare LLC, No. 1:15-cv-00189, 2015 WL 6511301, *4 (N.D.W.Va. Oct. 28, 2015). "Despite lacking a definitive test for bad faith, Fourth Circuit district courts routinely evaluate bad faith under § 1446(c)(1) by determining whether plaintiffs engaged in forum manipulation specifically to prevent removal." Shorraw v. Bell, Civil Action No. 4:15-cv-03998-JMC, 2016 WL 3586675, * 3 (D.S.C. July 5, 2016) (compiling cases).

9. Under the applicable law:

> Determining whether the plaintiff manipulated the forum has been described as a two-step process… Ramirez, 2015 WL 4665809, at *4 (citing Aguayo v. AMCO Ins. Co., 59 F. Supp. 3d 1225, 1277 (D.N.M. 2014)). The first step and central inquiry is "whether the plaintiff actively litigated against the removal spoiler." Aguayo, 59 F. Supp. 3d at 1264. "A finding that the plaintiff did not actively litigate against the removal spoiler constitutes bad faith, and the Court will retain jurisdiction over the case." Id. at 1228. On the other hand, active litigation against the non-diverse defendant creates a presumption of good faith. Id. at 1229. The presumption may be rebutted at step two by a showing that "the plaintiff kept the removal spoiler in the case to defeat removal." Id.; see also Ramirez, 2015 WL 4665809, at *7 (requiring a defendant relying on the bad faith exception " 'to show either that the plaintiff did not litigate at all, or engaged in a mere scintilla of litigation against the removal spoiler; or (ii) that the defendant has strong, unambiguous evidence of the plaintiff's subjective intent, for which the plaintiff cannot offer any plausible alternative explanation.' " (quoting Aguayo, 59 F. Supp. 3d at 1277)). Plainly, the presence or absence of bad faith will depend on the unique circumstances of each case.

Massey v. 21st Century Centennial Ins. Co., No. 2:17-CV-01922, 2017 WL 3261419, at *2 (S.D.W. Va. July 31, 2017) (retaining federal court jurisdiction and denying remand).

3

10. In this case, Westridge and Preston, as parties which presented themselves as adverse to one another, engaged in forum manipulation in order to prevent Hartford from removing this case from Preston County, West Virginia, to this Court. Despite presenting themselves as parties that were adverse to one another and represented by separate counsel, Westridge and Preston have been discovered to be working together to attempt to prosecute claims against Hartford, with no good faith intent to litigate claims against one another, as will be more fully described herein. The actions of Westridge and Preston in this respect represent forum manipulation, fraudulent joinder, fraud and/or collusion, so as to qualify this case for the bad faith exception regarding the timing of removal under 28 U.S.C. § 1446(c)(1). Far from operating as adverse parties with antagonistic interests, Westridge and Preston have acted with a common interest to prosecute claims against Hartford in a collusive manner that is wholly inconsistent with their official litigation status as plaintiff and defendant, respectively.

11. The collusive actions of Westridge and Preston are of particular concern in the context of insurance claims, where it is generally recognized that collusion between an insured and a third-party claimant may operate to void insurance coverage. See, e.g., 17 Couch on Insurance § 239:134 (regarding "Collusion between insured and third party," and significance of insured and third party claimant working together to try to enhance damages for insurance indemnification purposes). "'Collusion' is a legal term describing a defense created when two or more persons conspire to defraud a court or a third party (usually an insurance company)." 14 Couch on Ins. § 199:33, Collusion; Relationship to Party (quoting Gilyana v. Assyrian American Ass'n of Chicago, 2015 IL App (1st) 150460, 397 Ill. Dec. 837, 43 N.E.3d 164 (App. Ct. 1st Dist. 2015)). "[W]here deliberate misstatements are made by the insured which materially harm the company or aid the injured person, the policy may be avoided by the company." 7A Couch on Ins. § 106:31

("Collusion between insured and claimant").

12. This Court has original jurisdiction over this civil action based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332, and this action may be removed to this Court pursuant to 28 U.S.C. § 1441(a) because:

    a. Once the parties are aligned according to their true status, this action involves a controversy arising between citizens of different states.

        (i) Westridge and Preston are aligned, working together, and are not adverse to one another. They are West Virginia companies.

        (ii) Defendant Hartford is now, and was at the time of the commencement of this action, an Indiana corporation with its principal place of business in the State of Connecticut.

    b. The amount in controversy in this action exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

13. Accordingly, this action is removable to this Court pursuant to 28 U.S.C. § 1441(a).

14. This Notice of Removal is filed within thirty (30) days after receipt by Hartford of papers--specifically, a June 4, 2018 email from counsel for Preston--from which it could first be ascertained that the case is one which is or has become removable, pursuant to 28 U.S.C. § 1446(b)(1) & (3), and within the parameters of 28 U.S.C. § 1446(c)(1) and its bad faith exception to removal of a state court action after one year.

15. Preston County, West Virginia, is within the territorial jurisdiction of the United States District Court for the Northern District of West Virginia, Clarksburg Division.

16. Pursuant to 28 U.S.C. § 1446(a), this Notice of Removal includes a short and plain statement of the grounds for removal together with a copy of all process, pleadings, and orders

served upon Hartford in this action.

17. Pursuant to 28 U.S.C. § 1446(d), Hartford has served, or will promptly serve, written notice of the filing of this Notice of Removal upon all parties to this action, and will file a copy of the Notice of Removal, along with a Notice of Filing of Notice of Removal, in the Circuit Court of Preston County, West Virginia, Civil Action No. 16-C-69. A copy of the Notice of Filing of Notice of Removal (without exhibits) is attached as Exhibit A.

18. Copies of the complaint and cross claim filed against Hartford by Westridge and Preston, respectively, are attached hereto collectively as Exhibit B. In addition, pursuant to Local Rule of General Practice 5.01(c), a certified copy of the state court record will be filed electronically by Hartford within 21 days of this submission.

19. In the event Westridge and/or Preston seek to remand this case, or the Court considers remand sua sponte, Hartford respectfully requests the opportunity to submit such additional argument, briefing, and/or evidence in support of removal as may be necessary.

## Factual and Procedural History

20. When this action was commenced in Preston County Circuit Court, Westridge, in its complaint, claimed to assert claims against both Preston and Hartford in connection with a building that it owns in Kingwood, West Virginia. According to the complaint allegations, Westridge owned the property in question, and leased it to Preston pursuant to the terms of an alleged lease agreement. Westridge alleged that the property suffered vandalism damage on or about January 20, 2015, and that (i) Preston should be liable for the damage under the terms of the alleged lease agreement existing between Westridge and Preston, and (ii) Westridge should be entitled to insurance proceeds under an insurance policy issued by Hartford to Preston in connection with the property.

6

21. Westridge purported to assert claims for breach of contract and negligence against Preston, and claims for "first-party bad faith" and declaratory judgment against Hartford.

22. Preston, for its part, filed an answer to Westridge's complaint and a cross-claim against Hartford as its co-defendant on or about June 27, 2016. In that filing, Preston alleged it was a tenant/lessee of the property in question, which was owned by Westridge. According to Preston's filing, the property was damaged by vandalism on January 18, 2015, and—according to Preston—Hartford subsequently investigated whether a vacancy exclusion contained in the insurance policy insuring the property applied to the claimed loss. Preston alleged that Hartford's investigation of the vacancy exclusion was a "bogus assertion that the vacancy exclusion may bar all coverage[.]" June 27, 2016 State Court filing by Preston at ¶110 (contained with Exhibit B hereto). Preston alleged that Hartford's investigation of vacancy "was an effort to intimidate and coerce [Preston] into accepting a 'low ball' offer." Id. at ¶139. Preston asserted claims for "Insurance Bad Faith" and "Declaratory Judgment" against Hartford.

23. Hartford challenged Westridge's standing to assert direct claims against Hartford, and the state court agreed with Hartford's position. On or about January 30, 2017, the state court entered a January 20, 2017 Order granting Hartford's motion to dismiss against Westridge. After that ruling, the only claims that remained in the state court case were (1) Westridge's breach of contract and negligence claims against Preston, and (2) Preston's "insurance bad faith" and declaratory judgment claims against Hartford.

24. Thus, the state court recognized that Westridge had no colorable legal claims against Hartford, despite Westridge holding itself out as a plaintiff both with respect to Preston and Hartford.

25. What was not known at the time, however, was that Westridge had no good faith

7

intent to prosecute its remaining claims against Preston. The supposedly adverse relationship between Westridge and Preston was, in fact, a sham, asserted to prevent Hartford from removing the case.

26. Westridge has engaged in only a token amount of discovery. It has not served written discovery on Preston, or on Hartford. Westridge has not noticed any depositions. Westridge, through counsel, has only appeared at a few depositions, and has skipped others altogether. Westridge has not provided any depositions dates for its corporate representative and/or member to testify, despite repeated requests. Westridge has not responded to written discovery requests from Hartford. Westridge has not received any written discovery from Preston nor any discovery requests from Preston. See generally Massey v. 21st Century Centennial Ins. Co., No. 2:17-CV-01922, 2017 WL 3261419, at *6 (S.D.W. Va. July 31, 2017) ("The Court finds that Plaintiff did not actively litigate her case against Tully. Her failure to do so constitutes bad faith. Aguayo, 59 F. Supp. 3d at 1228; Ramirez, 2015 WL 4665809, at *4.").

27. Preston, in turn, has not directed any discovery to Westridge. While it has served dozens of discovery requests and deposition requests on Hartford, it has not served written discovery on Westridge; it has not sought deposition testimony from Westridge; and it has not filed any motions testing Westridge's claims or theories.

28. The first deposition in this case occurred on April 21 and 22, 2018, and was noticed by Preston for a Hartford corporate representative. In that deposition, Craig Rotruck attended and appeared as a corporate representative for Westridge. No lawyer appeared for Westridge. Mr. Rotruck was introduced on the record as Westridge's corporate representative by counsel for Preston. Mr. Rotruck has been identified as the sole member of Westridge.

29. At the same April 21-22, 2018 deposition, James Lobb appeared as a corporate

8

representative for Preston. Preston was represented by counsel, who took the deposition of the Hartford witness.

30. In subsequent depositions, Mr. Rotruck continued to appear as a corporate representative for Westridge (sometimes represented by counsel, sometimes not), and Mr. Lobb continued to appear as a corporate representative for Preston, whose counsel took all of the depositions.

31. Hartford noticed depositions for representatives of Westridge and representatives of Preston in separate notices served on or about April 27, 2018.

32. In response to those notices, on May 30, 2018, counsel for Preston told counsel for Hartford that Mr. Rotruck—in addition to serving as a corporate representative for Westridge—would also serve as a corporate representative for Preston, and that Preston's counsel intended to have "attorney-client" privileged communications with Mr. Rotruck. That is, according to Preston's counsel, the same person, Mr. Rotruck, would serve as a corporate representative for the plaintiff, Westridge, as well as for the co-defendant, Preston. Counsel for Preston further indicated his belief that there would be no need for Westridge to appear at the Court-ordered mediation in the case.

33. On June 4, 2018, counsel for co-defendant Preston reiterated in writing his prior oral representation that he intended to have attorney-client privileged communications with Mr. Rotruck, notwithstanding Mr. Rotruck's status in this case as an official corporate representative (and the sole member) of the plaintiff Westridge.

34. Also on June 4, 2018, Preston's insurance agent wrote to Hartford in response to a subpoena issued to the agent, stated that Westridge and Preston have common ownership, and expressed "…so we are confused how they are filing a suit against themselves."

35. On June 7, 2018, counsel for Hartford wrote back to counsel for Preston on Preston's counsel's suggestion that he should be able to have attorney-client privileged conversations with Mr. Rotruck (Westridge's corporate representative), even though Westridge is suing his client Preston. Counsel for Hartford wrote: "With respect to your question on whether we consent to the idea that Mr. Rotruck will be—under your proposal—a corporate representative of the plaintiff Westridge, and a corporate representative of co-defendant Preston, who will have alleged privileged conversations with you as counsel for Preston despite having participated in the litigation to date as a representative for Westridge, we do not."

36. Discovery has revealed that the property in question was owned jointly by Mr. Rotruck and Mr. Lobb for several years, until each filed for bankruptcy in the United States Bankruptcy Court for the Northern District of West Virginia. In their bankruptcy court filings, Mr. Rotruck and Mr. Lobb claimed the property in question as a personal residence, and claimed to be expending hundreds of dollars a month in utilities in connection with the home.

37. According to the bankruptcy court filings, Mr. Rotruck and Mr. Lobb lost the property in question to foreclosure, with a sheriff's sale occurring in 2011.

38. Thereafter, Mr. Lobb's sister acquired the property, and formed Westridge to own the property. When Mr. Lobb's sister passed away a few years later, she left the property not to her brother, Mr. Lobb (who was still subject to bankruptcy court proceedings), but to his partner Mr. Rotruck. Membership in Westridge thus passed to Mr. Rotruck.

39. Westridge insured the property through a homeowner's policy until 2014. Hartford was not the insurer of the property at that time.

40. In 2014, Preston, not Westridge, sought to insure the property through Hartford by adding it to a business policy that Preston maintained for other properties it owned.

41. Preston, in adding the property to its existing business insurance policy with Hartford in 2014 and again for 2015, did not inform Hartford that it was not the owner of the property or that the property was vacant. Preston instead represented to Hartford that the property was used in Preston's funeral operations as a gathering place and reception area for families attending funerals at Preston's other nearby locations.

42. On the basis of such representations, Hartford insured the property pursuant to the existing Preston business policy. That insurance policy contained expressed exclusions for vacant properties, and/or alleged vandalism occurring at vacant properties. For policy provision purposes, the key analysis is whether the property was vacant for more than 60 days leading up to the time of an alleged loss.

43. Preston did not disclose to Hartford that the property was vacant at the time the policy was issued, that the property had not been used for business purposes, or that Preston did not have ownership of or an insurable interest in the property.

44. On or about January 20, 2015, Preston reported an alleged vandalism loss to Hartford. At the time of that insurance claim, both Mr. Lobb and Mr. Rotruck held themselves out as representatives of Preston.

45. In all of their dealings with Hartford related to the claim, Mr. Rotruck and Mr. Lobb denied that the property was vacant in the lead up to the loss. They affirmatively represented at various junctures that Mr. Rotruck had been living in the house and that the property was used for the business operations of Preston. Such representations were recorded in a variety of statements by Mr. Rotruck and Mr. Lobb to Hartford.

46. During the course of the insurance claim, Preston and Westridge for the first time produced an alleged lease agreement between Preston and Westridge. That lease agreement is the

subject of Westridge's current breach of contract claim against Preston. According to what Westridge and Preston represented in the course of the insurance claim, Preston—as tenant—paid rent to Westridge—as landlord—for Mr. Rotruck (Westridge's sole member) to live in the house in question. That is, Preston allegedly paid rent to Westridge for Westridge's own sole member, Mr. Rotruck, to live in that house. Cf. 8A Couch on Ins. § 116:45, Fraudulent or sham transactions relevant to ownership ("In determining the question of coverage, the law will go behind a sham transaction to determine the actual relationship of the parties. For example, it will determine that a lease was not in fact a lease but a fictitious transaction").

47. During the course of the insurance claim, Hartford requested that Preston produce water, heating, and electric bills for the property in question. Mr. Rotruck, now purporting to act on behalf of Preston, sent Hartford a few electric bills for around the time of the alleged loss in January 2015, but failed to provide and water or gas bills. The electric bills showed minimal usage for the property in and around the time period of the alleged loss.

48. During the course of the insurance claim, Preston retained counsel, and eventually through its current counsel, accused Hartford of bad faith for having investigated whether the property in question was vacant in the 60 days leading up to the time of the loss.

49. Mr. Rotruck and Mr. Lobb eventually both represented to Hartford during the course of the insurance claim and vacancy investigation that they had been in the house until Thanksgiving 2014—within 60 days of the alleged January 18, 2015 vandalism—and that Mr. Rotruck had been living there regularly.

50. Mr. Rotruck and Mr. Lobb represented to Hartford that the house had been heated leading up to the alleged loss, and that vandals had damaged the boiler that heated the house on January 18, 2015.

51. In reliance on such representations, Hartford paid more than $130,000 to Preston for the alleged vandalism event.

52. Preston, through counsel, has pursued of every Hartford witness in deposition Preston's theory that it was alleged bad faith for Hartford to have investigated whether the property was vacant in the 60-day period leading up to the time of the loss.

53. Hartford asked both Westridge and Preston to produce utility records in discovery in the litigation. To date, Westridge has not responded to Hartford's discovery requests directed at utility records, while Preston, in written responses dated June 14, 2018, has stated that it has no such records.

54. During the course of discovery, Hartford has subpoenaed utility records for the property in question.

55. The gas records, produced to Hartford's counsel on June 1, 2018 by Mountaineer Gas, indicate that gas service was cut off to the property in 2010; that the gas meter was removed in 2011; and that gas service was not restored until December 2016.

56. The water records, produced to Hartford's counsel on June 6, 2018 by Kingwood Sanitary Sewer Board and Kingwood Water Works, indicate that there was no water or sewer service to the property in question from February 24, 2010 through November 30, 2016.

57. The utility records demonstrate that contrary to the prior representations of Mr. Rotruck (plaintiff Westridge's representative) and Mr. Lobb (co-defendant Preston's representative), the property in question was in fact vacant, and had been vacant for five years leading up to the alleged loss on January 18, 2015.

58. Hartford has asked both Westridge and Preston to supply records of rent payments pursuant to the purported lease at the center of Westridge's putative claims against Preston. To

13

date, Westridge has not responded to such discovery, nor produced any records substantiating the existence of any bona fide lease agreement between Westridge and Preston. Preston has stated in discovery responses dated June 14, 2018 that it has no such records.

59. Hartford has asked both Westridge and Preston to produce bankruptcy related records regarding the property in question. To date, Westridge has failed to respond to such discovery, while Preston has stated it has no such records.

60. Review of the four bankruptcy court proceedings for Mr. Rotruck and Mr. Lobb reflect that the last of their four personal bankruptcies was closed on January 12, 2015, with notice of the same being mailed to Mr. Lobb on January 14, 2015. Mr. Lobb and Mr. Rotruck notified Hartford on January 20, 2015 that the property in question was allegedly vandalized on January 18, 2015.

61. Upon information and belief, Westridge, at the time it prepared and filed its complaint, did not believe that it had colorable claims against Preston, did not intend to actively litigate claims against Preston, and knew that the property in question had been vacant for years leading up to the alleged loss. Upon information and belief, Westridge intended to assist Preston in asserting claims against Hartford and attempting to maximize claimed damages and recovery.

62. Upon information and belief, Preston, at the time it responded to Westridge's complaint and asserted cross claims against Hartford, did not intend to actively litigate the Westridge claims, and knew the property in question had been vacant for years leading up to the alleged loss.

63. Upon information and belief, Westridge and Preston worked together to defeat diversity jurisdiction through the artifice of Westridge's claims against Preston and Hartford, because Preston knew that if it instituted its own lawsuit against Hartford, such a lawsuit would be

removable to this Court. Westridge and Preston, by and through Mr. Rotruck and Mr. Lobb, worked together to borrow Westridge's ownership status, and Preston's business insurance policy, with respect to the property in question to try to fashion an insurance claim by working together in a collusive fashion. Their efforts in this respect were fraudulent, and predicated on a series of material misrepresentations to Hartford regarding the use and occupancy of the property.

64. Upon information and belief, Westridge and Preston engaged in intentional conduct to deny Hartford the chance to remove the case to federal court.

65. The June 4, 2018 email from Preston's counsel, indicating that he intends to have attorney-client privileged communications with Westridge's corporate representative, Mr. Rotruck, is an objective indicator that the official plaintiff (Westridge) and the official co-defendant (Preston) are actually working together collusively against Hartford. The June 4, 2018 email represents an "other paper" under 28 U.S.C. § 1446(b)(3) pursuant to which Hartford could ascertain for the first time that Westridge and Preston are effectively one and the same in the context of this lawsuit, with Mr. Rotruck intending to appear as a corporate representative of both the plaintiff and the co-defendant in the same lawsuit, with the same attorney preparing Mr. Rotruck to testify (for Preston) and while simultaneously defending against Mr. Rotruck's claims, by and through Westridge, against Preston.

66. In addition, the utility records produced to Hartford for the first time in June 2018 in response to subpoenas objectively indicate the property in question was vacant for years leading up to the issuance of the Hartford policy and the alleged loss, such that Westridge and Preston— who would have had actual knowledge of that status as the purported landlord and tenant of the property—have been affirmatively working together to make fraudulent representations and omissions to Hartford about the actual status and use of the property at the time the Hartford policy

was issued and at the time of the loss.

67. Westridge and Preston's contentions in the original complaint and responsive pleadings that they are adverse to one another and seeking to actively litigate against one another are a sham, and those parties have engaged in bad-faith, collusive behavior for the express purpose of limiting Hartford's removal rights. Their bad faith conduct in this respect triggers the bad-faith exception of 28 U.S.C. § 1446(c)(1). The evidence of fraud, collusion, and conspiracy with which Westridge, Preston, and their representatives have approached their insurance and litigation claims against Hartford further supports a finding of bad faith under 28 U.S.C. § 1446(c)(1).

WHEREFORE, Hartford requests that the action pending against it in the Circuit Court of Preston County, West Virginia, Civil Action No. 16-C-69 be removed to the United States District Court for the Northern District of West Virginia, Clarksburg Division, and that this Court assume jurisdiction of the matter pursuant to diversity of citizenship jurisdiction of this Court.

Respectfully submitted,

/s/ David L. Wyant
David L. Wyant (WVSB #4149)
Bailey & Wyant PLLC
1219 Chapline Street
Wheeling, WV 26003
dwyant@baileywyant.com
304-233-3100

John P. Fuller (WVSB #9116)
Bailey & Wyant, PLLC
500 Virginia Street E Suite 600
Charleston, WV 25301
jfuller@baileywyant.com
304-345-4222

Michelle E. Gaston (WVSB #7494)
Steptoe & Johnson PLLC
P.O. Box 1588
Charleston, WV 25326-1588
michelle.gaston@steptoe-johnson.com
304-353-8126

/s/ Mark A. Moses
Mark A. Moses (WVSB #12560)
Steptoe & Johnson PLLC
1085 Van Voorhis Rd, Suite 400
Morgantown, WV 26507
mark.moses@steptoe-johnson.com
304-933-8162

OF COUNSEL:
Katheryn M. Lloyd (*pro hac vice to be applied for*)
Carpenter Lipps & Leland LLP
280 North High Street, Suite 1300
Columbus, Ohio 43215
lloyd@carpenterlipps.com
614-365-4100

        Attorneys for Defendant Hartford Casualty
        Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant And Cross Claim Defendant Hartford Casualty Insurance Company's Notice Of Removal was served this 15th day of June, 2018, by ordinary U.S. mail, postage prepaid, upon:

| Lance E. Rollo, Esquire<br>44 High Street<br>Morgantown, WV 26505 | Samuel D. Madia, Esquire<br>Shaffer Madia Law<br>343 West Main Street<br>Clarksburg, WV 26301 | Michael J. Romano, Esquire<br>Law Office of<br>Michael J. Romano<br>128 South Second Street<br>Clarksburg, WV 26301 |

/s/ David L. Wyant
One of the Attorneys for Defendant
Hartford Casualty Insurance Company