IN THE CIRCUIT COURT OF PRESTON COUNTY, WEST VIRGINIA

WESTRIDGE ESTATE, LLC,
Plaintiff

v.

Civil Action No. 16-C-69

PRESTON FUNERAL ENTERPRISES, LLC,
and HARTFORD CASUALTY INSURANCE
COMPANY, an Indiana Company
Defendants

16 MAR 30 PM 12:02
BETSY CASTLE
CIRCUIT CLERK
PRESTON COUNTY WV
FILED

## COMPLAINT

     1.      At all times relative herein, the Plaintiff, Westridge Estate, LLC ("Westridge") is a limited liability company organized under the existing laws of the State of West Virginia and authorized and licensed to conduct business in this state with a principal place of business of 295 South Price Street, Kingwood, West Virginia, 26537.

     2.      At all times relative herein, the Defendant, Preston Funeral Enterprises, LLC ("Preston Funeral") is a limited liability company organized under the existing laws of the State of West Virginia and authorized and licensed to conduct business in this state with a principal place of business of 295 South Price Street, Kingwood, West Virginia, 26537.

     3.      At all times relevant herein the Defendant, Hartford Casualty Insurance Company ("The Hartford"), based upon information and belief, is a business corporation organized under the existing laws of the state of Indiana, with its principle place of business at 501 Pennsylvania Parkway, Suite 400, Indianapolis, Indiana, 46280, and licensed and authorized to conduct business in the state of West Virginia.

     4.      All acts and omissions alleged herein occurred in Preston County, West Virginia, no federal question exists, and therefore this Court has exclusive and proper jurisdiction over this matter.

     5.      Venue is proper in this county pursuant to W.Va. Code §56-1-1.

     6.      As used in this complaint, "Defendant" also refers to all agents, employees, and representatives of the Defendant acting within the scope of their employment, apparently and


EXHIBIT
B

actually. The doctrine of *respondeat superior* is hereby invoked and alleged. Accordingly, the Defendant is responsible for the acts and omissions of these agents, employees, and representatives as aforesaid or those acting under their command or at their behest, both actually and apparently.

## BACKGROUND

7.     Westridge is the owner of certain real estate located at 106 Highland Drive, Kingwood, West Virginia, 26537. This property contains certain improvements including, but not necessarily limited to, a main commercial building and two outbuildings.

8.     On or about the 24th day of June, 2014, Westridge did enter into a lease agreement with Preston Funeral to lease the aforementioned property to Preston Funeral in furtherance of Preston Funeral's funeral home business.

9.     Of primary importance in the lease was that Preston Funeral was to maintain the property in the same condition as it was when the lease commenced.

10.     Pursuant to this lease, Preston Funeral was obligated to obtain commercial property insurance to insure the property against loss or damage, with said insurance proceeds to protect solely Westridge's interest.

11.     Upon information and belief, Preston Funeral did obtain insurance on the property from The Hartford.

12.     On said date, the policy of insurance was in full force and effect.

13.     On or about the 20th day of January, 2015, the leased property did suffer damage as the result of certain vandalism which occurred due to the negligent, reckless, and/or intentional conduct of Preston Funeral.

14.     At said time, the leased premise was in full control and custody of Preston Funeral.

15.     The damage to the property on the 20th day of January, 2015, occurred under circumstances placing within it the coverage of the insurance policy issued by The Hartford.

16.     Preston Funeral had a duty and obligation to prevent the incident in question which led to the damage of the property on the 20th day of January, 2015.

17.     Preston Funeral breached its duty to prevent the act(s) that caused damage to the premise and to maintain the premises in good condition.

18.     Westridge is the owner of certain personal property located in the aforementioned leased premise. The property located therein is also insured by the policy of insurance obtained by Preston Funeral for the sole benefit of Westridge.

19.     On the date aforesaid, certain items of personal property located in the lease premise were damaged and/or destroyed by vandalism. At said time and place, all items of personal property that were damaged and/or destroyed were owned by Westridge.

20.     As a direct and proximate cause of the breach of duty by Preston Funeral aforesaid, Westridge had been damaged for which Preston Funeral is liable.

21.     The Hartford did issue an insurance policy on the leased premise, policy number 40SBANO9917, to Preston Funeral.

22.     Said policy was in full force and effect on the day the premised did suffer damage.

23.     The insurance policy issued by The Hartford did provide insurance coverage and protection to Westridge as additional insureds pursuant to not only the contractual agreement between Westridge and Preston Funeral but by also being listed as owners of the insured property on the policy for insurance.

24.     As the plaintiff, Westridge is an additional insured pursuant to the policy of insurance issued by The Hartford and, as a result, Westridge is a first party insured.

25.     The Hartford has a duty of good faith and fair dealing to Westridge as additional insureds and a duty to promptly investigate and resolve claims when and if claims, such as the one presented by Westridge, are presented. The Hartford has a statutory duty to promptly investigate and resolve claims such as the one presented by Westridge.

26.     The Hartford breached its statutory duty of good faith and fair dealing by effectively denying payment to Westridge to which it is legally owed and has done so knowingly.

27.     The Hartford's actions constitute common law first party bad faith as well as statutory bad faith pursuant to W.Va. §33-11-4(9) in various ways including, but not necessarily limited to, the following:

        a.  Failing to acknowledge and to act promptly upon receiving notification of loss on the leased premises;

        b.  Failing to properly investigate the claim as presented; and

    c.   Refusing to attempt, in good faith, to effectuate a prompt, fair, and equitable settlement of the claim as presented.

28.    The acts and conduct of The Hartford denied Westridge the protections guaranteed by West Virginia law, the regulations of the West Virginia Insurance Commission, and the insurance contract itself.

29.    The acts and conduct of The Hartford denied Westridge a just, equitable, timely resolution of Westridge's claim.

30.    The conduct of The Hartford was intentional and constitutes a breach of the statutory duties and responsibilities of insurance carriers in West Virginia and operated to unreasonably deprive Westridge of benefits due them pursuant to both West Virginia law as well as the insurance contract.

31.    The conduct of The Hartford, in breaching its duties owed to Westridge, is the result of malice and intentional conduct by The Hartford against Westridge.

32.    The actions of The Hartford were intentional, malicious, willful, oppressive, and otherwise reflected a conscious disregard for Westridge's statutory rights as well as the rights under the terms of the insurance contract and were done with a deliberate intent to injure and harm Westridge.

33.    Because of The Hartford's actions of bad faith as aforesaid, Westridge is entitled to punitive damages.

<u>COUNT ONE – BREACH OF CONTRACT</u>

34.    Westridge re-alleges all allegations contained herein.

35.    On or about the 24th day of June, 2014, Westridge and Preston Funeral did enter into a contractual lease agreement wherein Preston Funeral would lease from Westridge certain property located at 106 Highland Drive, Kingwood, West Virginia.

36.    Terms of the lease were for five (5) years with a monthly lease payment of One Thousand Two Hundred Dollars ($1,200.00). Said monthly rental payment was waived for the first year of the lease.

37.     Explicitly stated in the lease was that Preston Funeral shall obtain and maintain all property and/or liability insurance on the premise during the term of the lease agreement with said insurance proceeds, if obtained, to protect Westridge's interest in the premise.

38.     Further, Preston Funeral is responsible for all repairs to both the interior and exterior of the leased premise for any and all damages caused during the period of the lease agreement.

39.     Preston Funeral is required to return the leased premise in as good a condition as it was upon entry of the lease agreement, less any normal wear and tear.

40.     Preston Funeral assumed all liability and responsibility in connection with its occupancy of the leased premise and agreed to hold Westridge harmless for any damage thereto.

41.     On or about the 20th day of January, 2015, during the period of time in which Preston Funeral was in exclusive possession of the leased premise, the leased premise did suffer significant damage to the interior and exterior of the main building as well as the interior and exterior of at least one of the outbuildings.

42.     To date, Preston Funeral has breached its obligations to Westridge in that the leased premise has suffered certain damage and the property, over one year later, remains in a state of disrepair and unfit for any use.

43.     Westridge has fulfilled its contractual obligation consistent with the agreement between the parties by tendering the leased premise to Preston Funeral in the agreed-upon condition and fit for the use in which it was intended to be used by Preston Funeral.

44.     Upon information and belief, Preston Funeral has refused or otherwise failed to maintain the property in good repair and has likewise refused or otherwise failed to remit to Westridge the agreed-upon rental payments.

45.     Because of the breach aforesaid, Westridge has suffered damages, both actual and consequential, for which Preston Funeral is liable.

## COUNT TWO – NEGLIGENCE

46.     Westridge re-alleges all allegations contained herein.

47.     On or about the January, 2015, while in exclusive use and possession of the leased premise aforesaid, Preston Funeral, through its own negligence, did allow the leased premise to

sustain certain damage to the interior and exterior of the main building as well as to at least one outbuilding.

48.     Preston Funeral had a duty to maintain the leased premise in as good a condition as it was when they took possession of the premise.

49.     Preston Funeral beached its duty to Westridge by

a.   negligently allowing the property to suffer significant damage to both the main building as well as to at least one outbuilding,

b.   Refusing or otherwise failing to make necessary repairs to the building including, but not limited to, allowing the premises to becomes inundated with dangerous mold and failing to abate same, and

c.   Failing to make the necessary repairs to the premises once it became clear that the property had, in fact, been damaged

50.     Because of this negligence as aforesaid, the leased premised suffered significant damage, both actual and consequential.

51.     Because of this negligence as aforesaid, the leased premise has continued to stand in a state of disrepair wherein the damage to the building becomes more significant with each passing day.

52.     Because of this negligence as aforesaid, Westridge has suffered damages, both actual and consequential, for which Preston Funeral is liable.

53.     But for the negligent acts of Preston Funeral Westridge would not have suffered the damages as alleged.

## COUNT THREE – FIRST PARTY BAD FAITH

54.     Westridge re-alleges all allegations contained herein.

55.     The policy of insurance by and between The Hartford and Preston Funeral and/or Westridge provides insurance protection to Westridge as additional insureds via Westridge's contractual agreement with Preston Funeral and by virtue of Westridge being named as an additional insured on the policy.

56.     The Hartford had actual knowledge that the property it was insuring through its policy of insurance with Preston Funeral and/or Westridge inured for the sole benefit of Westridge, who actually owned the insured property.

57.     As additional insureds, Westridge is a first party insured.

58.     The Hartford has a duty of good faith and fair dealing to Westridge as an additional insured and has a duty under the terms and conditions of the policy of insurance to promptly investigate and resolve all claims as presented by its insured.

59.     On or about the 20th day of January, 2015, approximately two days after the incident in which the leased premised suffered significant damage, a claim was made to the Hartford under the terms and conditions of the policy that was in effect at the time.

60.     The Hartford has a statutory duty to promptly investigate and resolve any and all claims presented by its insureds.

61.     The Hartford breached its contractual and statutory duties and obligations to its insureds and breached its duty of good faith and fair dealing.

62.     The acts and omissions committed by The Hartford in its dealing with its insureds were in violation of W.Va. Code §33-11-4(9) in various ways including, but not necessarily limited to, the following:

    a.   Failing to acknowledge and act reasonably promptly upon communication with respect to its insureds' claim;

    b.   Failing to adopt reasonable standards for the prompt investigation of claims such as the one presented by its insured,

    c.   Refusing to attempt, in good faith, to effectuate a prompt, fair, and equitable settlement of its insureds' claim,

    d.   Compelling Westridge to file suit to recover any amounts due under the terms of the insurance policy,

63.     All of the acts and omissions of The Hartford in handling of the claim as presented, and the frequency thereto, indicate a general business practice.

64.     All of the acts and omissions of The Hartford were intentional, willful, and outrageous in character and were done in bad faith and with a conscious disregard to the rights of its insured.

65.     All of the acts and omissions of The Hartford were of such a nature that Westridge is entitled to recover punitive damages from The Hartford in order to deter them and others from engaging in this type of behavior again.

66.     As a result of the bad faith conduct of The Hartford, Westridge is entitled to recover compensatory damages for all the general damages it sustained as a result of the aforementioned conduct, as well as the punitive damages.

## COUNT FOUR – DECLARATORY JUDGMENT ACTION

67.     Westridge re-alleges all allegations contained herein.

68.     On or about December, 2011, the Lititz Insurance company issued a policy of insurance on the subject property to Westridge. At that time, Westridge was the named insured on the policy of insurance.

69.     On or about January, 2014, Preston Funeral, as a result of its obligations under the terms and conditions of its lease with Westridge, obtained insurance on the subject property whereby the subject property was added to Preston Funeral's existing policy of property insurance through a "policy change."

70.     The aforementioned change in policy reflected not only the addition of the subject property to the existing policy of insurance but listed the effective policy period from the 5th day of January, 2015 until the 5th day of January, 2016.

71.     The subject property description listed not only the address of the property but listed Westridge as the owner of the subject property, thereby making Westridge a named additional insured under the policy.

72.     In the event of loss, Westridge is entitled to the insurance proceeds under the policy of insurance issued by The Hartford to Preston Funeral, a fact known to The Hartford prior to the issuance of the policy.

73.     A claim was submitted by Preston Funeral and/or Westridge to The Hartford for monies due to Westridge under the terms and conditions of the insurance policy as a result of the damage to the insured property.

74.     Said claim, responded to by The Hartford several months after it submitted by Preston Funeral, was initially undervalued by The Hartford and then the offer to settle and compromise the matter was subsequently rescinded by The Hartford.

75.     A justiciable controversy exists over which this Court has jurisdiction to adjudicate the rights and responsibilities of the respective parties under the West Virginia Uniform Declaratory Judgment Act, W.Va. §55-13-16, et seq., namely asserting Westridge's right as a first-party plaintiff.

76.     The Hartford accepted, and Preston Funeral paid for the benefit of Westridge, an amount of $36,640.00 in annual premiums to insure the leased premise against threat of loss.

77.     A claim has been made pursuant to the terms and conditions of the policy of insurance for which Westridge is entitled to receive monies owed them.

WHEREFORE, the Plaintiff, Westridge Estate, LLC, demands from the Defendants, Preston Funeral Enterprises, LLC and Hartford Casualty Insurance Company, both jointly and severally, the following relief:

1. An amount sufficient to compensate the Plaintiff for its compensatory damages in an amount determined to be fair, equitable, and proper by the jury, including loss of use and income,
2. An award of punitive damages in an amount determined to be fair, equitable, and proper by the jury,
3. An amount sufficient to compensate the Plaintiff for all other damages caused by the Defendants' actions,
4. An amount sufficient to compensate the Plaintiff for its annoyance, inconvenience, aggravation, loss of use, and loss of income,
5. An Order directing that the commercial insurance policy issued by The Hartford, Number 40SBANO9917, inured to Westridge in the same manner in which it inured to Preston Funeral, such that Westridge has the right to stand as a first party in any action against The Hartford for statutory and/or common law bad faith,
6. Pre- and post-judgment interest,

7. Attorney's fees and court costs, and

8. Such other relief as is fair and just.


**The Plaintiff demands a trial by jury**


                                          WESTRIDGE ESTATE, LLC,
Plaintiff

By Counsel


LANCE E. ROLLO
Attorney at Law
44 High Street
Morgantown, WV  26505
(304) 296-4529  telephone
(304) 296-3964  facsimile
W.Va. Bar No. 9433

Counsel for the Plaintiff

## IN THE CIRCUIT COURT OF PRESTON COUNTY, WEST VIRGINIA

**WESTRIDGE ESTATE, LLC**

        **Plaintiff,**

**v.**

                                    **Civil Action No. 16-C-169**
                                      **Judge Lawrance S. Miller, Jr.**

**PRESTON FUNERAL ENTERPISES, LLC,**
**and**
**HARTFORD CASUALTY INSURANCE**
**COMPANY, an Indiana Company**

        **Defendants.**

**PRESTON FUNERAL ENTERPRISES, LLC**

        **Cross-Claim Plaintiff**

**v.**

**HARTFORD CASUALTY INSURANCE**
**COMPANY, an Indiana Company**

        **Cross-Claim Defendant**

### ANSWER, AFFIRMATIVE DEFENSES, DECLARATORY ACTION
### AND CROSS-CLAIMS
### OF DEFENDANT, PRESTON FUNERAL ENTERPRISES, LLC
### TO PLAINTIFF'S COMPLAINT

      Comes now the Defendant and Cross-Claim Plaintiff, Preston Funeral Enterprises, LLC,

[hereinafter "PFH"] by counsel, Michael J. Romano and Samuel D. Madia and answers or

otherwise responds to the allegations set forth in plaintiff, Westridge Estate, LLC's [hereinafter

"plaintiff"] Complaint as follows:

### <u>I. ANSWER & AFFIRMATIVE DEFENSES</u>

### <u>A.   FIRST DEFENSE/ANSWER TO COMPLAINT</u>

1.      PFH is presently without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 1 of the Complaint.

2.      PFH admits the allegations set forth in paragraph 2 of the Complaint.

3.      PFH is presently without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3 of the Complaint.

4.      PFH responds to the allegations contained in paragraph 4 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.

5.      PFH responds to the allegations contained in paragraph 5 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.

6.      The allegations contained in paragraph 6 of the Complaint related to the definition of "Defendant" do not require a response. However, PFH objects to plaintiff's definition of "Defendant" to the extent such definition does not distinguish between Defendant PFH and Defendant Hartford Casualty Insurance Company [hereinafter "Hartford"].   The remaining allegations contained in paragraph 6 of the Complaint constitute a legal conclusion to which a response is not required.

### Background

7.      PFH admits the allegations set forth in paragraph 7 of the Complaint.

8.      PFH admits the allegations set forth in paragraph 8 of the Complaint.

9.      PFH responds to the allegations contained in paragraph 9 of the Complaint by stating that the June 24, 2014, Lease between plaintiff and PFH speaks for itself. PFH further responds by admitting that it was obligated to deliver the premise, at the conclusion of the lease, to the plaintiff in as good as condition as it was when PFH took possession.   PFH further

responds that any allegations not specifically admitted herein which require a response are denied.

10.     PFH responds to the allegations contained in paragraph 10 of the Complaint by stating that the June 24, 2014, Lease between plaintiff and PFH speaks for itself. PFH further responds by admitting that it was obligated to comply with sections "5" and "11" of the June 24, 2014, Lease regarding insurance.   PFH further responds that any allegations not specifically admitted herein which require a response are denied.

11.     PFH admits the allegations set forth in paragraph 11 of the Complaint.

12.     PFH responds to the allegations contained in paragraph 12 of the Complaint by admitting that the property located at 106 Highland Drive was insured by a policy of insurance issued by Hartford.   PFH is unable to admit or deny the remaining allegations because "said date" is not specified.

13.     PFH responds to the allegations contained in paragraph 13 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.  To the extent a response is deemed necessary, PFH admits that the leased property (106 Highland Drive) suffered damage as a result of vandalism.   PFH further responds that any allegations not specifically admitted herein which require a response are denied.

14.     PFH responds to the allegations contained in paragraph 14 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.  To the extent a response is deemed necessary, PFH admits that the June 24, 2014, between Plaintiff and PFH was in effect when vandalism occurred at the leased premise.

15.     PFH responds to the allegations contained in paragraph 15 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.  To

the extent a response is deemed necessary, PFH admits that the damage incurred as a result of the vandalism is insured by the aforementioned policy of insurance issued by Hartford.

16.     PFH responds to the allegations contained in paragraph 16 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.  To the extent a response is deemed necessary, PFH denies that it had a duty to prevent the aforementioned criminal act of vandalism from occurring.

17.     PFH responds to the allegations contained in paragraph 17 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.  To the extent a response is deemed necessary, PFH denies that breached a duty to prevent the aforementioned criminal act of vandalism from occurring.  PFH further denies that it failed to maintain the premise in good condition.

18.     PFH responds to the allegations contained in paragraph 18 of the Complaint by admitting that Plaintiff owns personal property located in the leased premise; PFH also admits that certain property located within the leased premise is insured by the aforementioned Hartford insurance policy.  PFH further responds that any allegations not specifically admitted herein which require a response are denied.

19.     PFH admits the allegations set forth in paragraph 19 of the Complaint with one exception: upon information and belief, the aforementioned act of vandalism occurred on January 18, 2014.

20.     PFH responds to the allegations contained in paragraph 20 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.  To the extent a response is deemed necessary, PFH denies the allegations within said paragraph.

21.     PFH admits the allegations set forth in paragraph 21 of the Complaint.

22.     PFH admits the allegations set forth in paragraph 22 of the Complaint.

23.     PFH responds to the allegations contained in paragraph 23 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.  To the extent a response is deemed necessary, PFH states that the June 24, 2014, Lease between Plaintiff and PFH and the aforementioned insurance policy speaks for itself.

24.     PFH responds to the allegations contained in paragraph 24 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

25.     PFH responds to the allegations contained in paragraph 25 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

26.     PFH responds to the allegations contained in paragraph 26 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

27.     PFH responds to the allegations contained in paragraph 27 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

28.     PFH responds to the allegations contained in paragraph 28 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.

PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

29.     PFH responds to the allegations contained in paragraph 29 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

30.     PFH responds to the allegations contained in paragraph 30 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

31.     PFH responds to the allegations contained in paragraph 31 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

32.     PFH responds to the allegations contained in paragraph 32 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

33.     PFH responds to the allegations contained in paragraph 33 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

### Count One – Breach of Contract

34.    PFH repeats and realleges, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 33 and all unnumbered paragraphs of this Answer and Cross-Claim.

35.    PFH admits the allegations set forth in paragraph 35 of the Complaint.

36.    PFH responds to the allegations contained in paragraph 36 of the Complaint by stating that the June 24, 2014, Lease between plaintiff and PFH speaks for itself. PFH further responds by admitting the allegations of this paragraph.

37.    PFH responds to the allegations contained in paragraph 37 of the Complaint by stating that the June 24, 2014, Lease between plaintiff and PFH speaks for itself. PFH further responds by admitting PFH was obligated to maintain all insurance including liability insurance on the property in order to protect plaintiff.   PFH further responds that any allegations not specifically admitted herein which require a response are denied.

38.    PFH responds to the allegations contained in paragraph 38 of the Complaint by stating that the June 24, 2014, Lease between plaintiff and PFH speaks for itself. PFH further responds by admitting that is it responsible for all repairs to the interior and exterior of the premise.   PFH further responds that any allegations not specifically admitted herein which require a response are denied.

39.    PFH responds to the allegations contained in paragraph 39 of the Complaint by stating that the June 24, 2014, Lease between plaintiff and PFH speaks for itself. PFH further responds by admitting the allegations within paragraph 39 of the Complaint.

40.     PFH responds to the allegations contained in paragraph 40 of the Complaint by stating that the June 24, 2014, Lease between plaintiff and PFH speaks for itself. PFH further responds by admitting the allegations within paragraph 40 of the Complaint.

41.     PFH admits the allegations set forth in paragraph 41 of the Complaint with one exception: upon information and belief, the aforementioned damage initially occurred on January 18, 2014.

42.     PFH responds to the allegations contained in paragraph 42 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.   To the extent a response is deemed necessary, PFH denies that it has breached its obligations to Westridge; but admits that the leased premise has suffered certain damages and remains in a state of disrepair and unfit for use.

43.     PFH responds to the allegations contained in paragraph 43 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.   To the extent a response is deemed necessary, PFH admits that plaintiff has fulfilled its obligations to PFH pursuant to the terms of the June 24, 2014, Lease between plaintiff and PFH.

44.     PFH denies the allegations set forth in paragraph 44 of the Complaint.

45.     PFH responds to the allegations contained in paragraph 45 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.   To the extent a response is deemed necessary, PFH denies it has breached a legal duty to the plaintiff; but admits that plaintiff has suffered damages.

### Count Two - Negligence

46.     PFH repeats and realleges, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 45 and all unnumbered paragraphs of this Answer and Cross-Claim.

47.     PFH denies the allegations set forth in paragraph 47 of the Complaint.

48.     PFH responds to the allegations contained in paragraph 48 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.   To the extent a response is deemed necessary, PFH admits the allegations contained in this paragraph.

49.     PFH responds to the allegations contained in paragraph 49 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.   To the extent a response is deemed necessary, PFH denies the allegations contained in this paragraph.

50.     PFH responds to the allegations contained in paragraph 50 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.   To the extent a response is deemed necessary, PFH denies that it was negligent; but admits that the leased premise has suffered certain damages

51.     PFH responds to the allegations contained in paragraph 51 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.   To the extent a response is deemed necessary, PFH denies that it was negligent; but admits that the leased premise continues to endure certain damages.

52.     PFH responds to the allegations contained in paragraph 52 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.   To

9

the extent a response is deemed necessary, PFH denies that it was negligent; but admits that the leased premise continues to endure certain damages.

53.     PFH responds to the allegations contained in paragraph 53 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.   To the extent a response is deemed necessary, PFH denies the allegations contained in this paragraph.

## Count Three – First Party Bad Faith

54.     PFH repeats and realleges, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 53 and all unnumbered paragraphs of this Answer and Cross-Claim.

55.     PFH responds to the allegations contained in paragraph 55 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.   To the extent a response is deemed necessary, PFH admits the allegations contained in this paragraph.

56.     PFH responds to the allegations contained in paragraph 56 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

57.     PFH responds to the allegations contained in paragraph 57 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

58.     PFH responds to the allegations contained in paragraph 58 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

59.     PFH admits the allegations set forth in paragraph 59 of the Complaint.

60.     PFH responds to the allegations contained in paragraph 60 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required. To the extent a response is deemed necessary, PFH admits the allegations contained in this paragraph.

61.     PFH responds to the allegations contained in paragraph 61 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required. To the extent a response is deemed necessary, PFH admits the allegations contained in this paragraph.

62.     PFH responds to the allegations contained in paragraph 62 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required. To the extent a response is deemed necessary, PFH admits the allegations contained in this paragraph.

63.     PFH responds to the allegations contained in paragraph 63 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this

defendant, and accordingly, no response is required. To the extent a response is deemed necessary, PFH admits the allegations contained in this paragraph.

64.     PFH responds to the allegations contained in paragraph 64 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required. To the extent a response is deemed necessary, PFH admits the allegations contained in this paragraph.

65.     PFH responds to the allegations contained in paragraph 65 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required. To the extent a response is deemed necessary, PFH admits the allegations contained in this paragraph.

66.     PFH responds to the allegations contained in paragraph 66 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required. To the extent a response is deemed necessary, PFH admits the allegations contained in this paragraph.

### Count Four – Declaratory Judgment Action

67.     PFH repeats and realleges, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 66 and all unnumbered paragraphs of this Answer and Cross-Claim.

68.     PFH responds to the allegations contained in paragraph 68 of the Complaint by stating that said allegations are directed at a party or entity other than this defendant, and

accordingly, no response is required. To the extent a response is deemed necessary, PFH is presently without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.

69.    PFH is unable to fully respond to the allegations contained in paragraph 69 of the Complaint as written because of an ambiguity. PFH is only able to admit that the subject property was insured with a policy of insurance issued by Hartford.

70.    PFH is unable to fully respond to the allegations contained in paragraph 70 of the Complaint as written because of an ambiguity. PFH is only able to admit that the subject property was insured with a policy of insurance issued by Hartford.

71.    PFH responds to the allegations contained in paragraph 71 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.   To the extent a response is deemed necessary, PFH admits the allegations contained in this paragraph.

72.    PFH responds to the allegations contained in paragraph 72 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

73.    PFH admits the allegations set forth in paragraph 73 of the Complaint.

74.    PFH admits the allegations set forth in paragraph 74 of the Complaint.

75.    PFH responds to the allegations contained in paragraph 75 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required. PFH further responds that these allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

76.     PFH admits, upon information and belief, the allegations set forth in paragraph 76 of the Complaint.

77.     PFH responds to the allegations contained in paragraph 77 of the Complaint by stating that said allegations constitute a legal conclusion to which a response is not required.   To the extent a response is deemed necessary, PFH admits the allegations contained in this paragraph.

78.     PFH responds to the allegations contained in the WHEREFORE paragraph of the Complaint as follows:

79.     PFH admits that it is obligated to plaintiff for compensatory and incidental damages pursuant to the June 24, 2014, Lease between plaintiff and PFH;

80.     PFH denies that it is liable to plaintiff for punitive damages;

81.     If it is judicially determined that PFH is liable for the damages complained of by plaintiff, then PFH asserts that Hartford is liable to PFH for contribution and/or indemnity.

82.     Certain allegations are directed at a party or entity other than this defendant, and accordingly, no response is required.

83.     Certain allegations constitute a legal conclusion to which a response is not required.

<b><u>SECOND DEFENSE</u></b>

Any alleged damages allegedly incurred by plaintiff are solely the result of the negligence of a party or parties other than the PFH.

<b><u>THIRD DEFENSE</u></b>

The Complaint as filed fails to state a claim against PFH upon which relief can be granted.

14

### FOURTH DEFENSE

PFH, not being fully advised of all the circumstances surrounding the allegations set forth in the Complaint, reserve unto itself the defense that claims set forth in the Complaint fail or may fail to state claims against it upon which relief may be granted and should, therefore, be dismissed as a matter of law pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.

### FIFTH DEFENSE

PFH, not being fully advised of all the circumstances surrounding the allegations set forth in the Complaint, reserves unto itself the defense that plaintiff's claims for exemplary or punitive damages are or may be barred on the grounds that award of such damages would deprive PFH of its constitutional right to substantive and procedural due process of law and to equal protection under the law, which rights are guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and by the Constitution of the State of West Virginia. Rhodes avers that it did not participate, engage or assist in any act or conduct which could form the basis for an award of punitive damages, and that such punitive damages are, therefore, not recoverable to any extent whatsoever against PFH.

### SIXTH DEFENSE

Not being adequately advised as to all the facts and circumstances surrounding the allegations contained in the Complaint, PFH hereby invokes and asserts all other affirmative defenses which may prove applicable including, but not necessarily limited to, those specifically set forth in Rule 8(c) of the West Virginia Rules of Civil Procedure.

## SEVENTH DEFENSE

Because of the generality of the allegations in the Complaint, PFH incorporates by reference all defenses of the other parties herein and reserves the right to amend its Answer and defenses if investigation, discovery and further information should warrant such amendment, and, further, to assert any applicable matters of law during the pendency of this action.

## EIGHTH DEFENSE

If it is judicially determined that PFH is liable for the damages complained of by plaintiff, then PFH asserts that Hartford is liable to PFH for contribution and/or indemnity

WHEREFORE, to the extent plaintiff recovers against PFH, PFH seeks judgment in its favor against Hartford for contribution and indemnity for such sums as it is legally entitled, including, but not limited to, costs and attorneys' fees incurred in defending this action.

## PRESTON FUNERAL ENTERPRISES LLC DEMANDS TRIAL BY JURY ON ALL ALLEGATIONS IN PLAINTIFF'S COMPLAINT.

## II. CROSS-CLAIM
## OF PRESTON FUNERAL ENTERPRISES, LLC

## COMMON ALLEGATIONS

84. Defendant, Preston Funeral Enterprises, LLC incorporates Paragraphs 1 through 83 and all numbered and unnumbered paragraphs of this Answer and Cross-Claim as though fully set forth herein.

85. This Cross-Claim is brought by Preston Funeral Enterprises, LLC [hereinafter "PFH"] seeks damages and other relief against The Hartford Casualty Insurance Company [hereinafter, "The Hartford"] for breach of the West Virginia Unfair Trade Practices Act ("UTPA") relating to insurance companies and insurance claims adjustment, for common law

bad faith, and a declaration of legal rights and obligations of The Hartford regarding Plaintiff, Westridge, underlying Complaint against PFH.

86.     PFH and Westridge entered into a written lease agreement on June 24, 2014, concerning certain real estate located at 106 Highland Drive in Kingwood, Preston County, West Virginia [hereinafter, the "Westridge Property" or "insured premise"].

87.     The Westridge Property is owned by Westridge.

88.     At all times relevant hereto, PFH was a tenant/lessee of the Westridge Property which such property was insured under a policy issued by The Hartford.

89.     On or about January 18, 2015, an individual or individuals broke into the Westridge property and caused significant damage *[hereinafter, "the break-in" or "covered loss."]*.

90.     On January 20, 2015, Westridge and PFH became aware of the break-in and immediately notified the Kingwood Police Department, and PFH notified The Hartford.

91.     At the time of the break-in, the Westridge Property was insured by a policy of insurance issued by The Hartford listing PFH as the named insured.

## COUNT I – INSURANCE BAD FAITH

92.     PFH repeats and realleges, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 91 and all unnumbered paragraphs of this Answer and Cross-Claim.

93.     On January 20, 2015 – the day of the break in – The Hartford was promptly notified of the covered loss at the Westridge Property.

94.    On January 28, 2015, Chris Tekulve, the first of three adjustors assigned to this claim by The Hartford, arrived to conduct an inspection for the purpose of estimating the damages at the insured Westridge Property.

95.    On January 28, 2015, The Hartford's adjustor, Mr. Tekulve, performed an inspection and investigated the damage at the Westridge property.

96.    On January 28, 2015, Adjustor Tekulve determined that The Hartford was not capable of preparing an estimate of damage at the Westridge property because of the recognized historical nature of the structure.

97.    On the same day, The Hartford advised PFH to obtain an estimate for repairs from a suitable contractor with expertise in repair of historical structures.

98.    Pursuant to The Hartford's inability to prepare an estimate of damage at the Westridge Property, PFH engaged the services of Allegheny Restoration to prepare an estimate of damages.

99.    At all times, PFH fully cooperated with The Hartford with regard to the adjustment of damage at the Westridge property.

100.    On May 13, 2015, PFH provided The Hartford with an estimate from ADT Security Service to replace the security system at the Westridge Property, which was damaged in the break-in for $8,131.22.

101.    On May 28, 2015, PFH provided The Hartford with Allegheny Restoration's repair estimate in the amount of $285,805.11, which such estimate included restoration necessary to maintain a consistent appearance of the historical appearance of the Westridge Property, but did not include ADT's estimate to replace the security system or the value of a commercial stainless stove stolen during the break-in.

102.   The Hartford never questioned PFH regarding the Allegheny Restoration estimate or asked for additional information from PFH.

103.   On or around May 28, 2015, and upon receipt of Allegheny Restoration's repair estimate of $285,805.11 and ADT's estimate of $8,131.22, PFH's claim was reassigned by The Hartford to a second adjustor, Hobe Bauer.

104.   On June 4, 2015, Adjuster Bauer conducted another inspection of the Westridge Property for the purpose of estimating the damages from the break-in and conducted this June 4, 2015, inspection with a representative of Allegheny Restoration to answer any questions.

105.   Despite multiple opportunities to inspect and investigate the damage at the insured Westridge Property and contents therein after being timely notified of the claim, The Hartford failed to make any offer of settlement or payment under any of the coverages available to PFH in a prompt manner necessary to begin repairs and/or the replace of insured contents.

106.   On June 11, 2015, after a nearly five month delay following the covered loss, The Hartford informed PFH that "*Hartford Casualty is conducting an investigation into the facts of the loss and the extent to which the vacancy provisions [exclusion] of the policy may apply to the claim. . . Hartford is conducting its investigation under a reservation of rights.*"

107.   The Hartford's assertion that a vacancy provision in the subject insurance policy may exclude coverage was not raised until after The Hartford received Allegheny Restoration's repair estimate and ADT's estimate.

108.   On July 20, 2015, The Hartford requested a further breakdown of Allegheny's $285,805.11 repair estimate.

109.   On July 30, 2015, Adjustor Bauer emailed and mailed a letter to PFH which enclosed, for the first time, The Hartford's own repair estimate of damages in the amount of

$72,061.32 which included a $10,342.90 line item to replace the alarm system at the Westridge Property.

110.    In an attempt to financially coerce PFH, The Hartford intentionally provided its July 30, 2015, repair estimate and only offer of settlement to PFH while The Hartford bogus assertion that the vacancy exclusion may bar all coverage remained unresolved.

111.    The Hartford intentionally provided PFH with its repair estimate and only settlement offer with full knowledge that it was more than $200,000.00 below the combined estimates of Allegheny Restoration and ADT to repair the damages at the Westridge Property and did not consider the stolen commercial stove.

112.    Further, The Hartford failed to adjust other damages caused by the break-in of which it was aware or should have been aware including, but not limited to, the detached garage structure which was covered by PFH's policy.

113.    The Hartford never provided an explanation for its settlement offer in comparison to the Allegheny Restoration estimate or the reasons for its delay in making any settlement offer.

114.    On August 20, 2015, The Hartford sent written correspondence to PFH advising PFH that PFH's claim remains open because The Hartford *"ha[s] not received [PFH's] reply to our settlement proposal."*

115.    Due to The Hartford's failure to properly adjust PFH's claim and failure make a prompt, fair and equitable settlement offer after a nearly seven month delay, PFH was forced to retain legal counsel.

116.    On September 2, 2015, PFH's counsel rejected The Hartford's settlement proposal for the "low ball" offer that it was.

117. In an effort to resolve their own claim, on February 12, 2016, PFH provided The Hartford yet another estimate for repair of the damages at the Westridge Property from UTT Construction, Inc. (hereinafter "UTT") totaling $216,846.00 which did not include the separate ADT's estimate or replacement of the stolen commercial stainless stove, also excluded restoration necessary to the maintain a consistent appearance of the historical appearance of the Westridge Property.

118. On February 23, 2016, The Hartford notified PFH that PFH's claim was reassigned to yet another adjustor, Riggs Bedford.

119. On March 10, 2016, The Hartford's third adjustor in little more than one year, Mr. Bedford conducted yet another inspection for the purpose of estimating damages at the Westridge Property on behalf of The Hartford.

120. During Adjustor Bedford's March 10, 2016, inspection, he informed PFH and Westridge that The Hartford's $72,061.32 offer was no longer available.

121. On April 14, 2016, nearly fifteen months after the January 18, 2015, break-in, The Hartford retained Jenkins Restoration to perform an inspection presumably for the purpose of estimating the damage to the Westridge Property.

122. The Hartford has also advised PFH that even more inspections of the insured Westridge Property were to be expected.

123. Because The Hartford has not provided a prompt, fair and equitable settlement offer, thereby delaying PFH's ability to repair the insured premises, mold began to form at the Westridge Property.

124.  Because The Hartford did not provide a prompt fair and equitable settlement offer, thereby delaying PFH's ability to repair the insured premises, PFH lost anticipated business income over an extended period of time.

125.  Because The Hartford has not provided a prompt, fair and equitable settlement offer, thereby preventing PFH from repairing the insured premises in a timely manner, PFH was --forced into further litigation when it was sued by Westridge, the Plaintiffs herein, for failure to make repairs to the Westridge Property.

126.  Upon receipt of Westridge's Complaint, which included allegations of breach of contract and negligence, PFH tendered its defense to The Hartford and requested to be indemnified by The Hartford.

127.  The Hartford wrongly denied any obligation to defend its insured, PFH, in the subject civil action.

128.  On May 12, 2016, nearly sixteen months after the break-in, The Hartford, through its legal counsel, indicated that The Hartford's only settlement offer of $72,061.32 was still available.

129.  On May 24, 2016, The Hartford caused a check to be delivered to PFH's counsel in the amount of $132,455.30 which was not accompanied by an explanation of the coverages under which it was paid or the differences with the independent estimate obtained by PFH.

130.  The Hartford subsequently corrected its failure to explain the coverage and purpose of the $132,455.30 payment representing it to be a partial settlement payment based upon the inspection by Jenkins Restoration.

131.  The Hartford continued to fail to explain the differences between their latest settlement offer and the independent estimates prepared by Allegheny and UTT.

132.  The partial settlement payment by The Hartford, made more than sixteen months after notice of the PFH's claim, represented an approximately 85% increase of its only other settlement offer to PFH.

133.  At all times relevant hereto, The Hartford was subject to the laws of this State, both the common law and those certain statutory and regulatory laws regarding the appropriate and lawful conducting of the business of insurance including, but not limited to, those statutory sections and their attendant regulations known as the West Virginia Unfair Trade Practices Act, W.Va. Code § 33-11-1, *et seq*, and reg. 114 CSR 14.

134.  The Hartford and its agents, servants and employees, including those referenced herein, have negligently, willfully, and intentionally breached the statutory and regulatory requirements of the West Virginia UTPA governing insurance companies and insurance adjustors doing business in this State, as well as the common law, including, but not limited to, forcing the PFH into unwanted and unnecessary litigation, failing to comply with the time requirements for responding to PFH's inquiries, failing to adjust and settle PFH's claim promptly and timely, using economic superiority in an attempt to coerce the PFH into abandoning or giving up its claim for coverage under its insurance policy with The Hartford or settling it for less than fair value, and other acts which violate the statutory and common law.

135. . The Hartford had a legal obligation and duty to, among other things, make a prompt and full investigation of PFH's claims and to effectuate a prompt, fair and equitable settlement of PFH's claims, because liability and coverage were reasonably clear.

136.  The Hartford had a duty of fair dealing and good faith under the common law to PFH under the policy of insurance at issue which provided coverage to the insured premise and certain contents therein and for loss of use of the same.

23

137.   The Hartford failed to effectuate such a prompt, fair and equitable settlement offer in this case after receiving prompt notice of PFH's losses and damages when The Hartford knew or should have known that PFH's claims required a prompt, fair and equitable settlement under such policy or would cause PFH further unnecessary damages including, but not limited to, additional property damages, loss of income, and aggravation and inconvenience.

138.   The Hartford failed to provide any justification as to why its July 30, 2015, compromise settlement offer was fair, failed to provide any explanation for ignoring the two independent estimates obtained by PFH at The Hartford's command, and failed to provide an explanation as to what, if any, additional information was required by The Hartford to fully and fairly resolve PFH's claim in a timely manner, so that necessary repairs could begin.

139.   The Hartford failed to perform a full and prompt investigation of PFH's claims as evidenced by its latest settlement offer more than eighteen months after receiving notice of the PFH's claim and, further, unnecessarily delayed such investigation by among other things, citing to a "vacancy" policy exclusion to an effort to intimidate and coerce PFH into accepting a "low ball" offer.

140.   The Hartford knew or should have known that its conduct, and actions and failures to act, and other wrongful conduct, as alleged herein or as may become known or identified as this matter proceeds, was reckless, willful and malicious and would cause PFH to sustain and endure economic harm by depriving it of a prompt, fair and equitable settlement under said insurance policy and further preventing PFH from repairing the insured premise, replacing contents, and utilizing the Westridge Property for its intended business purposes, and denying claim for the loss of income therefrom.

141.   The acts and conduct, both omissions and commissions, of The Hartford its agents, servants and employees, constitute violations of the duties owed by insurance companies to first-party claimants, in this case, PFH, under the West Virginia statutory and regulatory provisions of the UTPA regarding insurance claims handling and settlement practices, including W.Va. Code §33-11-4(9), and the common law regarding insurance bad faith, which such violations in this case by The Hartford includes, but are not limited to, the following:

(a) Failing to acknowledge and act reasonably promptly with regard to communications respecting the PFH's claims;

(b) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(c) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(d) Compelling the PFH to institute litigation to recover amounts due under an insurance policy by making no offer or unfair offers of settlement;

(e) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(f) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts where applicable law for denial of a claim or for the offer of a compromised settlement;

(g) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(i) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

(j) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(k) Other such violations of the law that may become known or identified as this matter progresses.

142.   As set forth herein, The Hartford has committed such unlawful conduct in this case, and upon information and belief and other cases, with such frequency as to indicate a general business practice by failing to promptly investigate and fairly settle such claims when liability is reasonably clear.

143.   In addition to the above conduct, The Hartford may have committed other conduct in violation of the laws of this State, both common and statutory, not yet known or identified that may become known or identified as this matter progresses.

**WHEREFORE**, PFH seeks relief from The Hartford as follows:

(a)   Compensatory and general damages from The Hartford for the damage to the insured premise, covered contents, and loss of use and/or business income under coverages provided for under the insurance policy issued by The Hartford in amounts to be determined by the jury upon proper proof presented at trial;

(b)   Compensatory and general damages for the damages to PFH caused by the delay in repairing the insured premise, including any subsequent loss of value, and loss of income caused by the wrongful conduct of The Hartford in an amount to be determined by the jury upon proper proof presented at trial;

(c)   All damages, compensatory or general, allowed by law and under Hayseeds v. State Farm Fire and Casualty Company, and its progeny, including but not limited to: all attorneys' fees and costs, all expenses caused or

contributed to by failure to investigate, adjust and/or settle PFH's claims in accordance with the law, and damages for aggravation and inconvenience; in amounts to be determined by the jury upon proper proof presented at trial;

(d) Compensatory and general damages for aggravation, and inconvenience, loss of business reputation, expenses and attorney's fees, and other such damages in an amount to be determined by the jury upon proper proof presented at trial;

(e) Exemplary damages in an amount to be determined by the jury upon proper proof presented at trial;

(f) Costs, expenses and attorneys' fees;

(g) Pre-judgment and post-judgment interest; and,

(h) Such other general and specific relief as may become apparent through discovery and as shown by the evidence in this case.

## DECLARATORY ACTION

144. PFH repeats and realleges, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 143 and all unnumbered paragraphs of this Answer and Cross-Claim.

145. This declaratory judgment action is brought pursuant to W.Va. Code § 55-13-1 et seq., the Uniform Declaratory Judgments Act, and the principles set forth in Christian v. Sizemore, 383 S.E.2d 810 (W.Va. 1989), with one of the purposes being for the Court to declare and adjudicate the issues of uncertainty with respect to the rights, status and legal relations between PFH and The Hartford.

146. The Hartford issued policy 40SBANO9917 to PFH for the policy term of January 5, 2015, through January 5, 2016.

147. Plaintiff, Westridge filed a Complaint against PFH setting forth various allegations and theories of liability against PFH in connection with a property damage loss at 106

Highland Drive, in Kingwood, Preston County, West Virginia, including, but not limited to breach of contract and negligence.

148.   PFH requests that the Court declare, pursuant to the West Virginia Uniform Declaratory Judgment Act, the rights, duties and benefits afforded to PFH in this lawsuit, including PFH's right to be defended and indemnified by The Hartford against Westridge's Complaint.

149.   Upon receipt of Westridge's Complaint, PFH tendered its defense to The Hartford and sought to be indemnified by The Hartford.

150.   The act of vandalism is an "occurrence" pursuant to the applicable The Hartford insurance policy and triggers insurance coverage to defend and indemnify PFH in the instant Complaint brought by Westridge.

151.   The Hartford informed PFH that it will not defend or indemnify PFH with respect to Westridge's Complaint.

152.   PFH is entitled to a declaration that The Hartford is obligated to defend and indemnify PFH as to Westridge's Complaint pursuant to The Hartford's policy under the contract of lease with Westridge and for the negligent allegations made against it.

153.   PFH is also entitled to recover all reasonable costs, expenses, and attorneys' fees incurred in pursuing the relief requested in this Declaratory Action, including all attorneys' fees expended in its defense to date, along with pre-judgment and post-judgment interest.

**PRESTON FUNERAL ENTERPRISES LLC DEMANDS TRIAL BY JURY ON ALL ALLEGATIONS IN THIS CROSS-CLAIM.**

Respectfully submitted,
Preston Funeral Enterpises LLC,
By Counsel,

Michael J. Romano
W.Va. State Bar No. 6952
*LAW OFFICE OF MICHAEL J. ROMANO*
128 South Second Street
Clarksburg, WV 26301
(304) 624-1100

Samuel D. Madia
W.Va. State Bar No. 10819
*SHAFFER MADIA LAW PLLC*
343 West Main Street
Clarksburg, WV 26301
304-622-1100 (Phone)

29

## IN THE CIRCUIT COURT OF PRESTON COUNTY, WEST VIRGINIA

**WESTRIDGE ESTATE, LLC**

     **Plaintiff,**

v.

                                 **Civil Action No. 16-C-169**
                                 **Judge Lawrance S. Miller, Jr.**

**PRESTON FUNERAL ENTERPISES, LLC,**
**And HARTFORD CASUALTY INSURANCE**
**COMPANY, an Indiana Company**

        **Defendants.**

**PRESTON FUNERAL ENTERPRISES, LLC**

        **Cross-Claim Plaintiff**

v.

**HARTFORD CASUALTY INSURANCE**
**COMPANY, an Indiana Company**

        **Cross-Claim Defendant**

### CERTIFICATE OF SERVICE

     I, Michael J. Romano, do hereby certify that on the 23Rd day of June 2016, I served the foregoing "Answer, Affirmative Defenses, Declaratory Action And Cross-Claims Of Defendant, Preston Funeral Enterprises, LLC to Plaintiff's Complaint" upon the below listed counsel of record by facsimile as follows:

Mark A. Moses, Esq.
W.Va. State Bar ID 12560
Steptoe & Johnson, PLLC
1085 Van Voorhis Road, Suite 400
Morgantown, WV 26507
304-598-8116 (fax)
and
Michelle E. Gaston, Esq.
W.Va. State Bar ID 7494
Steptoe & Johnson, PLLC
PO Box 1588
Charleston, WV 25326
304-353-8180 (fax)
*Counsel for Hartford Casualty Insurance Co*

Lance E. Rollo, Esq.
W.Va. State Bar ID 9433
44 High Street
Morgantown, WV 26505
304-296-3964 (fax)
*Counsel for Plaintiff*

_____
**Michael J. Romano**